UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MARY N. DANTZLER, )
 )
    Plaintiff, )
 )
v. )
 )  CV417-062
GEORGIA PORTS AUTHORITY, )
 )
    Defendant. )

## REPORT AND RECOMMENDATION

Before the Court is Defendant Georgia Ports Authority's ("GPA") Motion for Summary Judgment, doc. 32, to which Plaintiff Mary N. Dantzler has filed a response, doc. 36. Dantzler brought this suit contending that GPA discriminated against her when it failed to provide her with a reasonable accommodation for her disability and then terminated her employment. *See* doc. 11 at 12, ¶ 65 (Amended Complaint); doc. 19 at 14, ¶ 65 (date of plaintiff's termination). GPA contends first, that it has presented an unrebutted, non-pretextual, non-discriminatory reason for Dantzler's termination, *see* doc. 32-1 at 12-14, second, that Dantzler has failed to state a *prima facie* failure-to-accommodate claim, *see id.* at 14-21, and, finally, that GPA is entitled to

partial summary judgment based on its discovery, during litigation, of Dantzler's misconduct, *see id.* at 21-24. For the following reasons, Defendant's Motion should be **GRANTED**.

## BACKGROUND[1]

Mary Dantzler was a GPA employee in the Trade Development Group. Doc. 32-2 at 1, (GPA's Statement of Undisputed Material Facts). She was initially hired as an Administrative Specialist, and was later promoted to the position of "Market Research Analyst" in 2012. Doc. 36 at 1-2. While she admits that her annual performance ratings as an Administrative Specialist ranged from the low to mid-30s out of 50 available points, it was after her promotion that more serious issues arose. *Id.* at 1. Dantzler's performance was criticized and she acknowledged that she frequently made mistakes. Doc. 32-3 at 25. She had a fraught relationship with her supervisors, particularly Jennifer Tatom and John Petrino. Doc. 36 at 7 (disputing GPA's characterization that she felt "hostility" toward Ms. Tatom and Petrino, but conceding she was afraid of them). And on at least one occasion, she complained

---

[1] In deciding the motion, the Court views the evidence and draws all reasonable inferences in favor of the nonmovant. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000).

that she was inadequately trained. *Id.* at 2. In 2015, Dantzler became concerned that she might suffer from Attention Deficit Hyperactivity Disorder ("ADHD").[2] *Id.* Shortly thereafter, Dantzler informed GPA's EEOC officer that Dantzler believed that she had a disability and that this disability was responsible for her performance problems. *Id.* at 3. A medical evaluation confirmed her suspicions and she received an official diagnosis in July of 2015, although she did not immediately inform GPA.[3] *Id.* at 2.

Also in July of 2015, Dantzler received another performance evaluation rated in the 30s. Doc. 36 at 2-3. Because of the low score, she was placed on a Performance Improvement Plan ("PIP") and warned that failure to complete this plan could result in her termination. *Id.* at 3. She was instructed to complete PIP paperwork which allowed her to make certain requests to address the perceived deficiencies in her work. *Id.* On July 22, 2015, Dantzler requested a quiet place to work and

---

[2] GPA states that "Plaintiff has used 'ADD' and 'ADHD' interchangeably in these proceedings and GPA uses the two terms as equivalents in this brief." Doc. 32-1 at 1 n. 1. Both parties have submitted a copy of a psychologist's evaluation of Dantzler for Attention Deficit Hyperactivity Disorder. Doc. 36-1 at 85-91; doc. 32-3 at 132-38. Given that her evaluating physician uses that term, the Court follows his example.

[3] The analysis of the diagnosis is dated June 25, 2015.

further training as part of her PIP. *Id.* After GPA reviewed that request for a "quiet place to work," it informed Dantzler that there were no available private offices and that she should remove this request from her PIP. *Id.* Dantzler did so. *Id.* On July 29, 2015, Dantzler informed Tatom of her ADHD, after Dantzler had removed her request and after the PIP had been approved.[4] *Id.* at 4. Dantzler requested, and received, some subsequent training, but was ultimately terminated. *Id.* at 5.

The parties do not dispute that Dantzler provided GPA with some notice of her diagnosis, but they disagree on the extent and circumstances of that notice. GPA concedes that Dantzler discussed her suspicion that she suffered from ADHD with her supervisor, Tatom, in June of 2015, but contends, at that time, Dantzler "did not . . . claim to actually have [ADHD], did not indicate that she had received a diagnosis of [ADHD], and did not ask for an accommodation concerning it at that point." Doc. 32-1 at 6. Dantzler responds that, although her discussions

---

[4] Dantzler's Brief in Opposition to GPA's Motion for Summary Judgment, doc. 36, states that she informed GPA of her diagnosis in June of 2015. However, the evidence Dantzler cites does not support this assertion. *See e.g.*, Doc. 36-1 at 4-7 (Dantzler's signed declaration); Doc. 36-1 at 95-97 (Ms. Tatom's affidavit). Instead, it appears from the record, that Dantzler informed Ms. Tatom that she *might* have ADHD in June. *Id.* As discussed above, the evidence shows that she did not receive a definitive diagnosis until June 25.

4

with Tatom were not formal, she had reason to believe that GPA either was aware of the process leading to her diagnosis, or should have been. Doc. 36 at 8-9. And she did file an affidavit with the court establishing that she told Tatom about her diagnosis prior to her termination. Doc. 36-1 at 4-7. Moreover, Dantzler contends that GPA's lack of established disability policy and procedure was (at least partly) to blame for Tatom's failure to recognize the significance of Dantzler's communications and act on them appropriately. Doc. 36 at 9 ("That Tatom failed to communicate [Dantzler's disclosure of her ADHD concerns] to anyone is evidence of the GPA's disregard for the ADA in failing to train managers and supervisors in those matters.").

## ANALYSIS

I. **Summary Judgment Standard**

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The "purpose of summary judgment is to 'pierce the

pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. *DeLong Equip. Co. v. Wash. Mills Abrasive Co.*, 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citations omitted). The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. *See, e.g., Tidwell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933-34 (11th Cir. 1989).

Substantively, a factual dispute is "material" if it concerns "facts that might affect the outcome of the suit under the governing law . . . ." *Anderson*, 477 U.S. at 248. "The materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id*. Thus, the Court must look to the ADA

to determine what facts are material to Dantzler's claim.

## II. Discrimination Under the ADA

Dantzler's allegations boil down to two basic claims. First, GPA violated the ADA when it terminated her due to her ADHD. Second, it discriminated against her when it refused her requested accommodation for that condition. The Court addresses each in turn.

*A. Dantzler's Termination.*

In regards to her termination claim, the ADA states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). These claims, like race discrimination claims under Title VII, are subject to the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) in the absence of direct evidence of discrimination. *See Jest v. Archbold Med. Ctr., Inc.*, 561 F. App'x 887, 889 (11th Cir. 2014); *Jones v. Aaron's Inc.*, ___ F. App'x ___, 2018 WL 4203459, * 6 (11th Cir. Sept. 4, 2018).

To establish a prima facie case of discrimination, "Plaintiff must

show that: (1) she is disabled, (2) she was a 'qualified individual' when she was terminated, and (3) she was discriminated against on account of her disability." *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016) (*quoting Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir. 2003)). If a plaintiff makes this showing, the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If an employer offers a non-discriminatory reason for the employment decision, the employee must then show that the proffered non-discriminatory reason was mere pretext. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272-73 (11th Cir. 2002). "A proffered legitimate, nondiscriminatory reason is not pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." *Lopez v. AT&T, Corp.*, 457 F. App'x 872, 874 (11th Cir. 2012) (*citing St. Mary's*, 509 U.S. at 515).

Here we assume, *arguendo*, that Dantzler established a prima facie case of ADA discrimination—namely, that she was disabled, was a qualified individual at the time of her termination, and was discriminated against on the basis of her disability. Defendant asserts

that it has proffered a reasonable, non-discriminatory justification for Dantzler's termination; namely, she was a poor employee and blamed her supervisors for her mistakes. There is more than sufficient evidence in the record to support this position. Defendant acknowledged that she had a fraught relationship with Ms. Tatom and that Mr. Petrino was "out to get" her. Doc. 32-3 at 94-97. She also admits to committing errors in her work at GPA. *Id.* at 91-92. Dantzler's performance reviews support her history of difficulties with work, and indicate—at best—an average performance. *Id.* at 116-121. Dantzler agrees that she received average performance results. *See* Doc. 36-1 at 6 (noting that she consistently performed at a 3 level). She agrees that her errors continued after she was placed on a PIP. *See id.* at 7 (noting "occasional errors" in the weeks after PIP). She also acknowledged that it was an "uphill battle" to "improve [her] organization and attention to detail." Doc. 32-3 at 25. In emails from before this suit was instituted, Plaintiff stated that "every single thing I do – without exception – has errors."[5]

---

[5] Plaintiff stated in her brief that the above referenced statement "was sarcastic and made in frustration." Doc. 36 at 9. However, this statement in a brief is not evidence. A word here is necessary considering Plaintiff's final statement in her brief in opposition which says "[a]ny statements of fact made by me herein which are not

*Id.* at 65. As a result, GPA has carried its burden to show a non-discriminatory reason for Dantzler's termination.

The burden shifts back to Dantzler, then, to show that this reason is mere pretext and that she was instead terminated because of her ADHD. Dantzler argues that the only reason her performance was poor was because she had ADHD. Doc. 36 at 8. However, this allegation is not sufficient to overcome GPA's alleged reasons for firing her. First, Dantzler has offered only her opinion that her poor performance was

---

supported by documentation are to be considered declared as true and correct under penalty of perjury." Although the parties' briefs should reference evidence, "the briefs themselves, like an attorney's opening or closing argument in trial, are not evidence." *Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715, 723 (N.D. Tx. 2006); see also Fed. R. Civ. P. 56(c). Even if we assume that Plaintiff could convert her brief into a declaration, her cursory statement is insufficient to accomplish this goal. Fed. R. Civ. P. 56 requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." 28 U.S.C. § 1746 requires that an unsworn declaration be made under penalty of perjury to have the same force and effect as a sworn affidavit. First, Plaintiff does not state that every statement in her brief is made on personal knowledge, or that she is competent to testify to each statement. More importantly here, Plaintiff does not identify to the court *what exactly it is she is attesting to*. She merely states that anything which is not otherwise "supported by documentation." Essentially, she leaves it up to the court to determine what evidence is supported by the record and which statements—as a result—Plaintiff will attest to. The problem here is self-evident, only the declarant can decide what it is they will attest to. And Plaintiff clearly understands how to file a declaration as she did so in support of her motion. Doc. 36-1. Plaintiff's *pro se* status, does not save her from complying with these procedural rules. *See Moreno v. Serco Inc.*, 734 F. App'x 656, 657 (11th Cir. 2018) ("Although we liberally construe *pro se* pleadings, *pro se* litigants must still follow procedural rules.") (citations omitted).

caused by her ADHD. *See e.g. Todd v. McCahan*, 158 F. Supp. 2d 1369, 1380 (N.D. Ga. 2000) (granting summary judgment when unsubstantiated opinion offered by Plaintiff). Moreover, Dantzler's poor performance and difficulties with her supervisors began before she notified GPA of her diagnosis, and continued thereafter. *See id.* at 1380 (granting summary judgment where history of poor performance prior to ADHD diagnosis and where no evidence that complaints of poor performance were "fabricated and/or staged as part of a 'ruse designed to mask' retaliation). Dantzler argues that Tatom knew of her diagnosis, but this knowledge alone is insufficient to establish pretext in the face of evidence that she consistently made mistakes in her work. *See id.* at 1374 (employee informed supervisor of ADHD prior to termination). Second, even if Dantzler's claim regarding her ADHD were sufficient to rebut GPA's first reason for termination—Dantzler's performance—it does not address GPA's second reason—Dantzler's poor relationship with her supervisors. *See e.g. Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) (allowing employer to fire an employee for a good reason, a bad reason, or a reason based on erroneous facts, so long as it is not a discriminatory reason). Because she has failed to rebut

GPA's non-discriminatory reasons, her claim for discriminatory termination should fail. *See e.g. Jest*, 561 F. App'x at 890 (affirming district court's decision to grant summary to defendant because "[plaintiff] failed to adequately rebut several of [defendant's] legitimate nondiscriminatory reasons for suspension and termination.").

### B. Dantzler's Requests for Accommodation

Plaintiff's complaint that Defendant failed to accommodate her disability also fails. "[A]n employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1262 (11th Cir. 2007); *see also Crutcher v. Mobile Hous. Bd.*, 2005 WL 2675207, * 11 (S.D. Ala. Oct. 20, 2005) ("It is well settled that an ADA violation occurs when an employer fails to provide 'reasonable accommodations' for an employee with a disability, unless doing so would impose an undue hardship on the employer.") (*citing Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)). While employers are required to reasonably accommodate disabled employees who are otherwise qualified, that duty "is not triggered unless a specific demand

for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999). In order to trigger the obligation, the person requesting accommodation must link the request to the disability. *See, e.g., E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (to trigger duty to provide reasonable accommodation, the employee "must explain that the adjustment in working conditions or duties she is seeking is for a medical condition-related reason"); *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 102 (1st Cir. 2007) (employee's request for reasonable accommodation "(1) must be sufficiently direct and specific, and (2) must explain how the accommodation requested is linked to some disability") (citations and internal quotation marks omitted). Thus it is not enough—even if an employer is aware of a potential disability—for an employee to request a change in their working conditions or duties *unless that request is linked to their disability.* Finally, the Plaintiff bears the burden of both of identifying an accommodation, "and of demonstrating that the accommodation allows him to perform the job's essential functions." *Lucas*, 257 F.3d at 1255.

Dantzler asserts that she told GPA of her ADHD diagnosis and that

she requested a "quiet place to work," and additional training.[6] However, what she did not do was link either request to her diagnosis. There is no evidence that Plaintiff requested a quiet place to work or additional training *because of* her ADHD. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999) ("[W]hile the notice does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' *the notice nonetheless must make clear that the employee wants assistance for his or her disability.*" (emphasis added)). What the record shows instead is a history of average to poor performance capped off by a PIP wherein Dantzler requested a quiet place of work and additional training. That PIP does not identify ADHD as the reason for those requests. Instead, the evidence shows that this request was made specifically to address identified deficiencies in Plaintiff's general performance.

---

[6] The Court notes that there is some disagreement as to what a "quiet place to work" means. Defendant argues that this meant that Plaintiff was requesting a private office and argues that this accommodation was not reasonable because none were available and there was no evidence that such an accommodation would affect Plaintiff's performance. Doc. 32-1 at 19-21. Defendant denies that she was requesting a "private office." Doc. 36 at 14. However, Defendant also states that there were two "designated [] future office spaces" that she could have used to perform her work. *Id.* at 11. Because the Court determines that Plaintiff failed to make a reasonably linked request for accommodation, the Court does not reach the issue of whether Plaintiff's proffered accommodation was reasonable.

Moreover, GPA could not have understood Plaintiff's requests to be related to an ADHD diagnosis, because at the time the requests were made, Plaintiff had not informed GPA of her diagnosis. As such, failure to provide Dantzler with the private space cannot be discrimination because Defendant was unware of Plaintiff's disability at the time it denied her request. *See Taylor,* 184 F.3d at 313 (noting that "employer must know of *both* the disability and the employee's desire for accommodations for that disability") (emphasis added). Courts have been clear that the "employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace." *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001); *see contra Kowitz v. Trinity Health*, 839 F.3d 742, 747-48 (8th Cir. 2016) (finding failure to accommodate where employer was "aware of [plaintiff's] specific condition, as well as the general nature of the limitations it placed on [plaintiff]"); *Taylor*, 184 F.3d at 303 (finding failure to accommodate where plaintiff's son had informed employer of plaintiff's diagnosis and hospitalization). GPA was under no obligation to assume that any requests Plaintiff made in response to a poor performance review were associated with her

diagnosis of ADHD, absent some indication from her or absent knowledge of the disability. *See Cole v. Cobb Cty. Sch. Dist.*, 2014 WL 4545766, * 4 (N.D. Ga. Sept. 12, 2014) (finding no request for accommodation where email requesting accommodation failed to mention disability and attendant limitations). Because the Court concludes that Plaintiff failed to request an accommodation, the Court does not address whether Defendant had an obligation to engage in an interactive dialogue with Plaintiff or whether Plaintiff's request was reasonable under the circumstances.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgement should be **GRANTED**.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any

request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 29th day of November, 2018.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA